**ALEXANDER, Collector of Internal Revenue,**
**v. COSDEN PIPE LINE CO.**

**No. 665.**

Circuit Court of Appeals, Tenth Circuit.

Feb. 9, 1933.

T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Herbert K. Hyde, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

J. C. Denton and R. H. Wills, both of Tulsa, Okl. (J. H. Crocker, I. L. Lockewitz, and J. P. Greve, all of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This action was brought by the Cosden Pipe Line Company to recover Federal excise taxes paid on the transportation of oil by the Pipe Line Company during the period from November 1, 1917, to December 31, 1921. A jury was waived and the case tried to the court. At the close of the evidence, the United States requested findings of fact and conclusions of law, and moved for judgment in its favor. The court denied such requests and motion, made special findings of fact and conclusions of law, and gave judgment to the Pipe Line Company on its first claim for $15,066.87, on its second for $165,-152.28, on its third for $18,333.25, and on its fourth for $746.92, and for interest.

The Pipe Line Company was organized in Oklahoma and has been doing business there since 1914. All of its stock is owned by Cosden & Company, an Oklahoma corporation, which operates a refinery at Tulsa. From November 1, 1917, to December 31, 1921, the principal business of the Pipe Line Company was that of carrying oil for Cosden & Company. The Pipe Line Company's business was wholly intrastate. It never held itself out as a common carrier, nor published any rates or tariffs covering the carriage of oil.

The Pipe Line Company did not own any of the oil transported by it between November 1, 1917, and December 31, 1921, and, insofar as the Pipe Line Company acted in connection with the purchase of the oil, it did so only as agent for Cosden & Company.

For some time prior to November 1, 1917, and up to July 1, 1918, the Pipe Line Company charged five cents a barrel, from July, 1918, to March 31, 1919, it made no charge, and from April 1, 1919, to the date of the trial it charged ten cents a barrel, for the transportation of oil for Cosden & Company. Such charges were sufficient to cover the cost of such transportation, and there is no proof that they were made in bad faith or to avoid taxation.

The assessments involved in this case are these: During the period from November 1, 1917, to March 31, 1919, the Pipe Line Company transported by pipe line and delivered to Cosden & Company 2,022,248.41 barrels of oil. For this service the Pipe Line Company made a charge of five cents a barrel, and paid an excise tax on that basis. The Commissioner increased the basis from five cents to twenty cents a barrel, and assessed an additional tax of $15,066.87.

During the period from November 1, 1917, to March 31, 1919, the Pipe Line Company transported and delivered to Cosden & Company 3,666,048.39 barrels of oil for which no charge was made. The Commissioner made an assessment thereon of $36,660.50, based on a rate of twenty cents a barrel.

During the period from November 1, 1917, to March 31, 1919, the Pipe Line Company transported for Pierce Oil Corporation 99,-590.31 barrels of oil for which no charge was made. The Commissioner made an assessment thereon of $995.90, based on a rate of twenty cents a barrel.

During the period from April 1, 1919, to December 31, 1921, the Pipe Line Company transported and delivered to Cosden & Company 20,644,020.34 barrels of oil. For this service the Pipe Line Company made a charge of ten cents a barrel, and paid a tax on that

basis. The Commissioner increased the basis from ten to twenty cents a barrel, and assessed an additional tax of $170,946.04.

The four assessments last mentioned were paid. Because of errors in computation, $5,-793.74 of the amount paid on the last mentioned assessment was refunded.

The twenty-cent basis was based on the published tariffs of common carriers in that vicinity.

The court found as a matter of law that the rate of five cents a barrel charged for the 2,022,248.41 barrels was the correct basis, and that the assessment of $15,066.87 was void; that the rate of ten cents a barrel for the 20,-644,020.34 barrels was the correct basis; that the additional assessment of $170,946.04 was void and that amount, less $5,793.76 which had already been refunded, should be returned to the Pipe Line Company; that the basis of twenty cents a barrel on the 3,666,048.39 barrels transported for Cosden & Company, for which no charge was made, was erroneous, and that the correct basis was ten cents a barrel; that the basis of twenty cents a barrel on the 99,950.51 barrels transported for Pierce Oil Corporation, for which no charge was made, was erroneous, and that the correct basis was five cents a barrel.

Two refunds of taxes assessed under the Revenue Act of 1917 (40 Stat. 300) and eight refunds of taxes assessed under the Revenue Act of 1918 (40 Stat. 1057) were made to the Pipe Line Company. These refunds were allowed on the theory that the charges for transportation actually made determined the basis of the assessments, and the Commissioner was without authority to determine and fix any other basis.

The Revenue Act of 1917 applied to such transportation up to and including March 31, 1919. The Revenue Act of 1918 applied to such transportation on April 1, 1919, and thereafter. The applicable provisions of such acts are set out in Note 1.

---

NOTE 1. The Revenue Act of 1917 (40 Stat. 300, 314, 315) in part provides:

"Sec. 500. That from and after the first day of November, nineteen hundred and seventeen, there shall be levied, assessed, collected, and paid * * * (d) a tax equivalent to five per centum of the amount paid for the transportation of oil by pipe line."

"Sec. 501. That the taxes imposed by section five hundred shall be paid by the person, corporation, partnership, or association paying for the services or facilities rendered.

"In case such carrier does not, because of its ownership of the commodity transported, or for any other reason, receive the amount which as a carrier it would otherwise charge, such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such commodity if the carrier received payment for such transportation: Provided, That in case of a carrier which on

The United States contends that the Pipe Line Company and Cosden & Company are in fact one corporation and not separate corporate entities; that the charges made by the Pipe Line Company were only bookkeeping entries and therefore this case falls under the provision of the statute giving the commissioner the right to use the tariffs of other companies as a basis in arriving at the tax, or, if there are no tariffs, a reasonable rate, because the oil transported was owned by the company transporting it.

■ It is a well settled general rule that a corporation is a legal entity distinct from its

---

May first, nineteen hundred and seventeen, had no rates or tariffs on file with the proper Federal or State authority, the tax shall be computed on the basis of the rates or tariffs of other carriers for like services as ascertained and determined by the Commissioner of Internal Revenue."

The Revenue Act of 1918 (40 Stat. 1057, 1101, 1102) in part provides:

"Sec. 500. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1917—* * * (e) A tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line."

"Sec. 501. (a) That the taxes imposed by section 500 shall be paid by the person paying for the services or facilities rendered. * * * (c) The taxes imposed by section 500 shall apply to all services or facilities specified in such section when rendered for hire, whether or not the agency rendering them is a common carrier. In case a carrier (other than a pipe line) principally engaged in rendering transportation services or facilities for hire does not, because of its ownership of the goods transported, or for any other reason, receive the amount which as a carrier it would otherwise charge, such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such goods if the carrier received payment for such transportation, such tax, if it cannot be computed from actual rates or tariffs of the carrier, to be computed on the basis of the rates or tariffs of other carriers for like services as determined by the Commissioner. In the case of any carrier (other than a pipe line) the principal business of which is to transport goods belonging to it on its own account and which only incidentally renders services for hire, the tax shall apply to such services or facilities only as are actually rendered by it for hire. Nothing in this or the preceding section shall be construed as imposing a tax (1) upon the transportation of any commodity which is necessary for the use of the carrier in the conduct of its business as such and is intended to be so used or has been so used; or (2) upon the transportation of company material transported by one carrier, which constitutes a part of a railroad system, for another carrier which is also a part of the same system.

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax cannot be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe 'nes for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

individual members or stockholders. Pierce v. National Bank of Commerce (C. C. A. 8) 13 F.(2d) 40, 47; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 S. Ct. 288, 52 L. Ed. 481; Pullman's Palace-Car Co. v. Mo. Pac. R. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499; Aiello v. Crampton (C. C. A. 8) 201 F. 891. But there are certain exceptions to this general rule. The existence of the corporation as a distinct entity is a legal fiction and, where to recognize it as such will justify wrong, protect fraud, or defend crime, the law will disregard this fiction. Pierce v. National Bank, supra; McCaskill Co. v. United States, 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590. But the facts in the instant case do not bring it within any recognized exception to the general rule. See Meischke-Smith v. Wardell (C. C. A. 9) 286 F. 785, where, in a pipe line tax case, this precise question was ruled adversely to the contention here made by the United States.

We therefore conclude the fact that the Pipe Line Company's stock is owned by Cosden & Company does not make them a single corporate entity, and that they must be regarded as separate corporate entities.

The remaining question presented is: When a carrier by pipe line charges a rate which is less than the usual charge for such service, does the rate charged fix the basis for the assessment of excise taxes under the Revenue Acts of 1917 and 1918, or does the Commissioner have the power to ascertain and fix the basis for such assessment from published tariffs, or, in the event there are no published tariffs, by determining a reasonable charge for the service.

Section 501 of the Revenue Act of 1917 reads in part as follows:

"In case such carrier does not, because of its ownership of the commodity transported, or for any other reason, receive the amount which as a carrier it would otherwise charge; such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such commodity if the carrier received payment for such transportation."

The language, "in case such carrier does not * * * receive the amount which as carrier it would otherwise charge," has reference only to cases where no charge is made. This is clearly indicated by the context. A carrier could not charge itself for services rendered to itself. Hence, if it owns the commodity carried, no charge could be made. Therefore, the specifically enumerated reason for not receiving the amount it would otherwise charge, viz., "ownership of the commodity transported," would arise only in a case where no charge was made. That provision and the closing clause of the sentence, "if the carrier received payment for such transportation," clearly indicate Congress was dealing with cases where no charge is made.

The above quoted portion of section 501 of the Revenue Act of 1917 is found, in a slightly different form, in section 501 (d) of the Revenue Act of 1918, as follows:

"In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation."

It will be noted that in the latter act Congress grants exemptions from the tax to carriers other than pipe line carriers in certain cases where no charge for the transportation is made, and deals, separately in subsection "d," with cases in which pipe line carriers make no charge for transportation. It will be further noted that in subsection "d" Congress by express language limits the provision to cases where no charge is made.

We therefore conclude that both sections 501 and 501 (d) apply only to cases where no charge is made. This is the departmental construction. All of the refunds above adverted to were made on the theory that the carrier had made a charge, and that such charge fixed and limited the basis for the tax.

Refunds were denied only in cases where the Commissioner was of the opinion that the oil transported belonged to the Pipe Line Company and therefore the oil was transported without charge, and in cases where the Pipe Line Company transported oil for others without charge.

We conclude, therefore, that where a bona fide charge was actually made the Commissioner was without authority to compute the tax on a higher basis.

The Pipe Line Company transported 3,666,048.39 barrels of oil for Cosden & Company, and 99,590.31 barrels for the Pierce Oil Corporation, prior to March 31, 1919, for which no charge was made. The Commissioner ascertained that the rates and tariffs of other carriers for like services was 12½ cents a barrel for the gathering service, and 7½ cents a barrel for trunk line transportation, and computed the tax on a basis of twenty cents a barrel. The court found that such transportation was only a "gathering" service and involved no trunk line transpor-

tation, and that the proper basis was ten cents a barrel for the first item and five cents a barrel for the second.

As to the oil transported for Cosden & Company for which no charge was made, the service involved both a gathering service and main line transportation. The oil was carried by lateral lines from the points of production to storage tanks. This was a gathering service. It was pumped from such tanks to the refinery of Cosden & Company at Tulsa. This was main line transportation. The average distance of the transportation was 47 miles. As to the oil transported for Pierce Oil Corporation for which no charge was made, only a gathering service was rendered. The main or trunk line transportation was made by the Pierce Oil Corporation through its own lines.

The Pipe Line Company had no "rates or tariffs on file with the proper Federal or State authority." Therefore, the tax was properly "computed on the basis of the rates or tariffs of other carriers for like services as ascertained and determined by the Commissioner." Section 501, Revenue Act 1917. The finding by the Commissioner that the basis or rates of other carriers for like service was 12½ cents for the gathering service and 7½ cents for main line transportation is fully supported by the evidence. But since the transportation for the Pierce Oil Corporation involved only a gathering service, the basis for the tax should have been 12½ cents a barrel instead of twenty cents a barrel.

It follows that the judgment of the trial court was excessive.

It is our conclusion that the tax of $36,660.50 on the transportation of oil for Cosden & Company was correct, and that $18,333.25 should be remitted from the amount recovered as of the date of the judgment. The tax on the transportation of oil for the Pierce Oil Corporation computed on the basis of 12½ cents a barrel amounts to $624.69. Therefore, the Pipe Line Company should also remit the sum of $375.71 from the amount recovered. It will, therefore, be ordered that the judgment be reversed unless, within twenty-five days from the filing of this opinion, the Pipe Line Company files in the clerk's office of the District Court for the Western District of Oklahoma a remittitur of said $18,333.25 and $375.71, and within ten days thereafter files with the clerk of this court a certified copy of the remittitur so filed. If such remittitur and certified copy are so filed, the judgment, less the amounts so remitted, will be affirmed. If such remittitur and certified copy are not filed within the time aforesaid, the judgment will be reversed and the case remanded. If the remittitur is not filed and certified, costs will be taxed against the Pipe Line Company.