**MOHAWK PETROLEUM CO. v. LEWIS,**
Collector of Internal Revenue.

No. 20048–R.

District Court, N. D. California, S. D.

June 24, 1937.

868

Joseph C. Meyerstein, of San Francisco, Cal., for plaintiff.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is an action at law by the Mohawk Company to recover excise taxes levied and paid upon the transportation of crude oil by pipe line from certain of plaintiff's leases' flow tanks to its Fruitvale refinery storage tanks. The amount contested originally was $1,621.11, but during the trial by mutual concessions it was reduced to approximately $875. This amount represents the tax upon oil produced at plaintiff's Red Ribbon lease, and another lease immediately adjacent which for all purposes can be considered the same as the Red Ribbon lease.

At the time the tax was laid the Red Ribbon lease (of which plaintiff was lessee) was one-quarter of a mile wide by half a mile long. It contained half a dozen oil wells each of which had a flow tank situated next to it into which the oil from the well flowed, and was measured and tested so that the royalties due the lessor could be computed. Immediately adjoining the lease was the Mohawk's refinery. Between the refinery and the wells, but closer to the former, were a group of oil storage tanks. From the flow tanks the oil was conveyed by pipe line, varying in length from one-quarter to one-half a mile, to the storage tanks where it was kept until there was a demand for it in the refinery, at which times it was moved into the refinery and manufactured into various petroleum products.

There is imposed a tax " * * * upon all transportation of crude petroleum * * * by pipe line." Revenue Act 1932, § 731 (a), 26 U.S.C.A. § 1420 et seq. note. The tax is payable by the carrier furnishing the transportation and is measured by a certain percentage of the value of the transportation service rendered. It has been held constitutional. Motter v. Derby Oil Co. (C.C.A.8) 16 F.(2d) 717.

The law involved on the subject is found in the taxing statute supra, the Treasury Department Regulations issued thereunder (Regulations 42), and four cases: Motter v. Derby Oil Co., supra; Dixie Oil Co. v. United States (C.C.A.5) 24 F.(2d) 804; Alexander v. Carter Oil Co. (C.C.A.10) 53 F.(2d) 964; and Alexander v. Cosden Pipe Line Co., 290 U.S. 484, 54 S.Ct. 292, 78 L.Ed. 452. No attack is made by either party upon any of these, thus leaving to the court for decision only questions of fact and of statutory construction.

The plaintiff seeks to establish its case upon a certain portion of article 26 of Regulations 42 providing: "If * * * the movement is * * * from wells to flow tanks or storage tanks situated in the immediate vicinity (of the wells) the movement is not such as a pipe line carrier would normally render and consequently is not subject to the tax * * *"

The defendant relies upon a further subdivision of section 26 of Regulations 42 stating: " * * * where a refinery maintains a * * * gathering line from a refinery to an oil field or pool the services which the refiner performs for himself are similar to those which pipe line carriers would otherwise render. The refiner * * * should pay the tax. * * *"

 Crude oil goes through the processes of production, transportation, and marketing.[1] Any oil that is produced, sold, and delivered must, of necessity, go to a market, and that delivery necessarily entails transportation. Whether the delivery is by vendor or vendee or is before or after sale, is immaterial. Congress subjected the transportation by pipe line to an excise tax which is levied independent of

[1] "Marketing" is used in the broadest sense, i. e., the disposition of the crude after it leaves the well or storage tanks. In other words, its disposition after production, as production is defined by the Regulations, has ceased.

distance traversed. As all oil is transported to a market, it follows that a tax must be payable when that transportation, regardless of the distance covered, is accomplished by pipe line. In other words, when there is a pipe line between wells and the market, the tax must be paid. The broad language of the statute will lead to no other conclusion. And it has been so construed by the Circuit Court of Appeals for the Tenth Circuit in Alexander v. Carter Oil Co., supra, 53 F.(2d) 964, at page 966: "It is possible for oil to go directly from the mouth of the well to the refinery; if so, transportation begins at the mouth of the well. Or, it may go to the flow or settling tanks, and from thence to market. If so, transportation begins when it leaves the flow or settling tanks."

The only question is: At what point along the line is the tax incurred? The tax here in question was assessed upon the transportation of the oil from the lease flow tanks to the storage tanks near the refinery. To determine its correctness, consideration must be given to several exemptions extended taxpayers by Regulations 42 and some of the cases.

It is settled that "transportation" as employed in the taxing statute does not include all carriage of oil through pipes. The Treasury Department and the courts have construed it as showing a congressional intent merely to tax transportation as a separate subject only when transportation is primarily independent of a related business transacted by the carrier. Thus the rule is that transportation which is incidental to production of oil is not taxable (Regulations 42, § 26). Under this exemption producers are entitled to transport their oil by pipe line to storage tanks in the vicinity of their wells. Alexander v. Carter Oil Co., supra. A corollary is that transportation incidental to manufacturing or refining is likewise exempt (Regulations 42, § 26). Refiners' pipe lines from refinery storage tanks into the refinery are tax free.

A question of fact arises as to the nature of the storage tanks in the present case. Were they incidental to production, or to refining? The evidence clearly showed that their primary use was in connection with the refinery. It appeared that all the oil in the tanks was moved into the refinery, usually within a relatively short period after the crude oil was stored in the tanks, and that none of the oil in the tanks was withdrawn therefrom to sell to other parties or for uses other than in the refinery. The storage tanks being incidental to refining, the oil moving by pipe line from them into the refinery was tax free; but the pipe lines going out into the field clearly constituted gathering lines, and transportation of oil through them was taxable under the portion of Regulations 42, § 26, quoted previously.

The various parts of section 26 are not inconsistent when it is kept in mind that all transportation is sought to be taxed; that while the government has extended certain exemptions, they must be strictly contrued against the taxpayer; and that the theory underlying the exemption is that the transportation is incidental to production. Therefore, that subdivision of Regulations 42, § 26, upon which plaintiff relies and which exempts pipe-line transportation to tanks in the vicinity of the wells, must be limited to cases where that transportation is incidental to production. Where, as here, that transportation is more incidental to refining or is approximately equally incidental to both refining and production, the reason for the exemption ceases and so does the exemption.

The Mohawk Company relies strongly on the Carter Case, where oil was exempted on a twelve-mile journey to storage tanks as authority sustaining its position. The case is not controlling. It is apparent beyond a doubt that the motivating force behind the exemption extended in that case was the fact that the tanks were utilized strictly for purposes of storage incidental to production, which was clearly a legitimate storage in view of the facts in that case. As much cannot be said for the plaintiff here, where the use was incidental to manufacure. The distinction is vital.

The penalties assessed against the taxpayer were proper. An order will therefore be entered directing judgment for the plaintiff in the amount of $369.33, which the defendant stipulated was due it, and directing entry of judgment in favor of the defendant upon the balance of the disputed items. Judgment will carry interest from the date of the payment of the taxes.

Findings may be prepared in accordance with this opinion.