**CAMINOL CO., LIMITED, v. UNITED STATES and six other cases.**

Nos. 275-B, 276-B, 7923-B, 6-B, 786-B, 394-B, 395-B.

District Court, S. D. California, Central Division.

Oct. 23, 1941.

**820**

Dempsey & Mackay, A. Calder Mackay, Thomas R. Dempsey, and Wellman P. Thayer, all of Los Angeles, Cal., for plaintiffs.

Wm. Fleet Palmer, Acting U. S. Atty., (now U. S. Atty.), and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., and Courtnay C. Hamilton, Asst. to Atty. Gen. of U. S., and J. S. Hornback, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., for defendant.

BEAUMONT, District Judge.

Plaintiffs bring these actions to recover taxes collected by the United States under authority of Section 731 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 636, on the transportation of crude petroleum by pipe line. Each plaintiff was the owner of the oil transported by such plaintiff, and of the pipe lines so transporting it. The suits were tried together, there being an identity of issues in all the actions. Actions numbered 275 and 276 were consolidated, as were those numbered 394 and 395.

Section 731 of the Revenue Act of 1932 by subsection (a) (1) requires that on all transportation of oil by pipe line a tax equivalent to four per cent of the amount paid for such transportation shall be paid by the person furnishing such transportation. By subsection (a) (2) it imposes, in case no charge for transportation is made either by reason of ownership of the commodity transported or for any other reason,

a tax equivalent to four per cent of the fair charge for such transportation, to be paid by the person furnishing such transportation; and by subsection (b) provides for computation of the fair charge indicated in subsection (a) (2) as follows:

"(1) from actual bona fide rates or tariffs, or

"(2) if no such rates or tariffs exist, then on the basis of the actual bona fide rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or

"(3) if no such rates or tariffs exist, then on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

For a proper understanding of the case, it seems advisable to refer to certain matters that were preliminary to the establishment of rates in the oil field known as the Los Angeles Basin. The Commissioner of Internal Revenue after obtaining certain data, and there being no actual bona fide rates existing in such territory, announced that he was preparing to determine the basis for taxation of transportation of oil by pipe line in such area. Major oil companies operating in California thereupon advised the commissioner that they desired to be heard before such rates were finally determined, and requested a conference with him for the purpose of considering what they believed would be a fair basis for such assessment. The commissioner granted this request, and the representatives of the companies met in Washington with the commissioner and his associates. The plaintiffs in these actions—generally regarded as "smaller" companies—were not represented. No taxpayer was asked to be present; there was no requirement that any such conference be held, and all taxpayers attending were present at their own instance. This conference considered oil-taxation matters in various California fields. It was held in October and November of 1933, and extended over a period of five or six weeks. After many discussions the commissioner agreed with the representatives of the companies present that two charges would be established in the Los Angeles Basin, one to be known as a "gathering" and the other as a "transporting" charge.

From the evidence it appears that the agreement of the conference was that gathering is that service rendered in carrying the oil from the point where gauged for royalty purposes to trunk or main-line stor-

age tanks; that transporting was that of delivering the oil from such storage tanks through such trunk or main line to the refinery.[1] The latter was a separate movement from the former. The oil "gathered" in the storage tanks or tank farms adjacent to the main line was forced by pumps maintained at such tank farms from the storage tanks into the main pipe line, and thence through the main line toward destination (refinery). Sometimes additional pumping stations (placed at intervals along the trunk line) were necessary for the continuation of this movement, this usually depending upon the number of miles the oil was so moved. There was a clear interruption of movement between the gathering and the transporting.

(1) The complaints of all the parties are essentially identical as to the legal issues, and each complaint has three causes of action. By reason of the first cause of action of each complaint and the evidence presented in support thereof, plaintiffs contend that they are not transporters of crude oil within the purview of the act; that their movements of oil were not taxable as transportation. This contention is without merit. The evidence shows that the plaintiffs either produced the oil from wells owned or leased by them or purchased it in the vicinity of their refineries in the Los Angeles Basin. Such oil was then pumped by plaintiffs through their own pipe lines to their refineries. The court is of the opinion that such movement is transportation in its more comprehensive sense, and is within the contemplation of Section 731, supra. In Alexander v. Carter Oil Co., 10 Cir., 53 F.2d 964, 966, the court said: "It is possible for oil to go directly from the mouth of the well to the refinery; if so, transportation begins at the mouth of the well." See, also, Alexander v. Cosden Pipe Line Co., 290 U.S. 484, 54 S.Ct. 292, 78 L. Ed. 452; McKeever v. Fontenot, 5 Cir., 104 F.2d 326, certiorari denied, 308 U.S. 588, 60 S.Ct. 113, 84 L.Ed. 492; Dixie Oil Co. v. United States, 5 Cir., 24 F.2d 804; Mohawk Petroleum Co. v. Lewis, D.C., 19 F. Supp. 867.

(2) Grounded on the second cause of action each plaintiff urges that the proof shows the basis employed for the imposition of the tax was unreasonable, and that the commissioner acted arbitrarily in establishing such basis. The provisions of the act imposing a tax on transportation of oil by pipe line and authorizing the Commissioner of Internal Revenue to fix reasonable charges as a basis of taxation have been held constitutional. Standard Oil Co. v. McLaughlin, 9 Cir., 67 F.2d 111; Motter v. Derby Oil Co., 8 Cir., 16 F.2d 717; Meischke-Smith v. Wardell, 9 Cir., 286 F. 785, 786. Was the action of the commissioner arbitrary? There is nothing in the evidence to indicate that the commissioner acted arbitrarily in establishing the basis of the tax in dispute. On the other hand, the evidence shows that he acted fairly. He and his associates had almost daily contact with the representatives of the various oil companies throughout the period of the hereinbeforementioned conference, listening to objections, discussing proposals and considering data bearing upon pipe-line transportation. All such matters were carefully examined. His conclusion appears to have been the result of thorough and impartial consideration, coupled with a desire to establish a rate that would be equitable to both the government and the taxpayers. And likewise it does not appear that his determination was unreasonable. Under such showing the commissioner's decision will not be disturbed. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 39 S.Ct. 332, 63 L.Ed. 717; Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894; Joseph Joseph & Bros. Co. v. United States, 6 Cir., 71 F.2d 389; Com. v. Spring City Foundry Co., 7 Cir., 67 F.2d 385.

(3) The remaining contention of plaintiffs and that contained in their third causes of action is that even if they are held to

---

[1] After the conference had been concluded the commissioner wrote to the representatives of the taxpayers who had attended, setting out his version of the basis determined, and requesting that they advise whether or not such version was correct. This they did, replying generally that his understanding was substantially accurate. Such acquiescence was that of approximately ninety per cent of the oil industry in the Los Angeles Basin. Thereafter, where there was both a gathering and a trunk-line movement (and such has been the case in substantially all the transportation of oil by the "major" companies) the tax has been computed and paid on both gathering and transporting charges.

be transporters, still they should pay a tax based only on the gathering charge of 2 cents; in other words, that the movement herein considered is at most only gathering and not both gathering and transporting.

Great importance has been attached by the parties to Alexander v. Cosden Pipe Line Co., 290 U.S. 484, 54 S.Ct. 292, 78 L.Ed. 452. The court has carefully read that case. For the purpose of obtaining a more detailed description of the movements of oil involved therein, the court has also read the statement of facts contained in the opinion of the Circuit Court of Appeals, 10 Cir., 63 F.2d 663, when the case was before that court, and has had recourse to a copy of the transcript of the evidence adduced at the trial in the District Court and to the findings of the District Court. It appears from the foregoing that in so far as concerns the causes of action arising from the two claims considered by the Supreme Court, the oil was obtained from various points of production in the Oklahoma oil fields and conveyed by pipe line therefrom to the refinery of Cosden & Company at Tulsa.[2]

The commissioner decided that the service in said case was both a gathering and a trunk-line (transporting) movement, and determined the tax accordingly.[3] The District Court concluded that it was a gathering movement only. The Supreme Court adopted such holding and decided that the tax should have been imposed on the basis of the gathering charge alone, stating [290 U.S. 484, 54 S.Ct. 295, 78 L.Ed. 452]:

"The plaintiff, an Oklahoma corporation, owns pipe lines leading into Tulsa, Okl., from oil fields in that state, and operates its lines in the transportation, intrastate, of crude oil. All of its stock is owned by Cosden & Co., another Oklahoma corporation, which operates an oil refinery at Tulsa. While not stated in the findings, the evidence shows that the two corporations are under substantially the same management, have the same offices, and in part have the same employees.

---

[2] From the evidence in Cosden Pipe Line Company v. Alexander, it appears that the average distance of the transportation of oil was more than forty miles. See, also, 63 F.2d at page 666.

[3] In its claim for refund, filed as an exhibit in the District Court of the Western District of Oklahoma, in Cosden Pipe Line Co. v. Alexander, claimant pipe line company stated that: "Its system is only a gathering line for the refinery of Cosden & Company." The commissioner took a position with regard to the claim and the movement of oil therein that is the same as that of the commissioner herein. In his reply of June 21, 1926 (also an exhibit in the Cosden case) to claimant's demand, he stated:

"Section 92, Treasury Department Regulations 49 (revised) as amended by Treasury Decision 3197 approved July 18, 1921, provides that, where the person so transporting is not a carrier, there is a taxable transportation of oil by pipe line within the meaning of Section 501 (d) whenever the movement of said oil, effected by the owner thereof is substantially similar to those movements which pipe line carriers usually undertake and perform; or, in other words, where the movement is not merely local and incidental to another business engaged in by the person so transporting, such as the producing or refining of oil. Thus where a refiner maintains a main, trunk, or stem line from his refinery to an oil field or pool, the services he performs for himself are similar to those which pipe line carriers would otherwise render to him. He should, therefore, pay the tax as though he had in fact employed the service of a carrier.

"Evidence shows that your company owned and operated pipe line systems in Osage, Creek, Okmulgee, Wagoner, Okfuskee, Rogers and Tulsa Counties in the State of Oklahoma, and that crude oil was gathered and transported from various wells in these counties to your refinery at West Tulsa, for distances ranging from about 12 miles to 48 miles. It is considered from the character of the movements and distances covered that they cannot be considered as local or intra-plant movements, but were similar to movements performed by pipe line carriers operating in the same fields for which charges were regularly made. *It is accordingly held that the gathering and transportation services* were subject to tax under the Revenue Acts of 1917 and 1918 [40 Stat. 300, 1057]. Since no tariffs were published by your company, naming rates for the service performed, the Department has for the purpose of taxation set up under authority of section 501 of the Act referred to rates per barrel as follows:

| | Gathering | Transportation | Total |
|---|---|---|---|
| Cosden & Co. | 12½¢ | 7½¢ | 20¢ |

* * * (Emphasis added)."

"The plaintiff is engaged chiefly in carrying oil for Cosden & Co., but it also carries large quantities for others. It does not hold itself out as a common carrier, it is not required by the State to file or publish rates or tariffs, and does not file or promulgate either. Common carrier pipe lines operating in the vicinity of the plaintiff's lines have both trunk lines and gathering lines, and also tariff stations at which oil is received into the trunk lines. The plaintiff has no tariff stations and receives oil at any place along its lines where it can obtain the oil. Its lines are gathering lines only and comparable only to the gathering lines of the common carriers; and the service which it renders, as compared with that rendered by the common carriers, is a gathering service only."

The carriage of oil herein considered is essentially similar to that held "gathering" in the Cosden case. The movement of oil by each present plaintiff was substantially the same as that of plaintiff Caminol Company. Caminol's oil was conveyed from the settling tanks at the wells by small lateral or feeding lines to a larger pipe line and thence, for a distance of slightly more than two miles, to its refinery. There were no storage or receiving tanks or stations or pumps at the junctions of the lateral lines with the larger line, but such feeding lines were directly joined to the larger one. The oil thus conveyed was forced through said lines by said plaintiff's pumps maintained at the wells where the oil was produced and gauged. When so transported the oil either was delivered immediately to the refinery or placed in storage tanks near the refinery where it was held until needed for refining. Such tanks were incident to the operation of the refinery. All the oil in question was transported in uninterrupted movement from the place of production to that of refinement.

There is further similarity between the Cosden case and the instant actions. The definition of gathering in said case was substantially the same as that agreed to at the conference at Washington. In that case (Cosden) it was said:

"While not appearing in the findings, the stipulated facts included the following:

" 'Any pipe line reaching from any point where oil is purchased or produced to the trunk or main line or to storage tanks at or near the main or trunk line or to tank farms is called a gathering line, without regard to its size, the distance, or the amount of oil carried through such line to the trunk or main pipe line, or to the trunk or main pipe line storage tanks, or to a tank farm.

" 'The gathering charge is a sum paid for the service rendered in moving oil from the point where it is tendered to or received by the carrier, whether it be the working tank at the well or the storage tanks in the field, to the trunk or main line tariff stations, or to a tank farm of the carrier or to main-line storage tanks. * * * ' " (Emphasis added.)

As heretofore defined, the conference understanding was that *gathering is the movement of the oil from the point where gauged for royalty purposes* (generally the settling or flow tanks at the wells where the oil is produced) *to the trunk or main pipe line* (generally storage tanks situated at the main line).

In the course of the trial J. M. Evans, a witness called by plaintiffs, one of the oil-company representatives attending the conference at Washington, and one who had had great experience in taxation matters, was questioned regarding the movement of Caminol's oil. He stated that such movement "is a gathering movement only." Likewise Fred B. Simms, called by plaintiff, also of lengthy experience in such matters and who represented another of the oil companies at the conference, testified that the movement of the crude oil by Caminol herein was "one movement". Question: "And which is it?" Answer (by Mr. Simms): "I would say it was a gathering movement." Furthermore, one of the witnesses called on behalf of the defendant, who had been an employee of the government for many years, whose employment concerned matters of taxation, and who also had attended the conference, upon examination by defendant's counsel, gave the following testimony:

"Q. Does the commissioner assess and collect taxes on what is known as gathering services of oil by pipe line? A. Yes, sir.

"Q. Do you know what those services are and what those movements are which are taxed? A. I think so.

"Q. Is the movement from field to refinery as performed by the Caminol Company such a movement?

" * * * * *

"A. It is a gathering service."

The commissioner has determined that both the 2-cent gathering charge and

**824**

the transporting charge of 3 cents (inadvertently charged at 4 cents in one instance) should apply. He computed the tax on such combined charges, and payment was made on such basis. The court is of the opinion that the plaintiffs' contention with respect to the third causes of action is sound; that such transportation of oil was that of gathering only under the construction placed by the Cosden case on a like movement, and that each plaintiff's tax should have been so premised. Each plaintiff is therefore entitled to recover the amount paid in excess of a tax based upon the 2-cent charge. Findings may be presented in accordance with these views.