MOTTER, Collector of Internal Revenue, v. DERBY OIL CO. *

(Circuit Court of Appeals, Eighth Circuit. December 13, 1926.)

No. 7152.

1. Internal revenue ⊚⟹9(14)—Pipe lines of oil refinery, transporting its own crude oil from wells, held subject to transportation tax; "person transporting by pipe line" (Revenue Act 1918, § 500, subd. [e] and section 501, subds. [a], [c], [d], being Comp. St. §§ 6309⅓a, 6309⅓b).

Corporation operating petroleum refinery, which obtained its crude oil from its own and other wells through its own pipe lines, was subject to tax on transportation by pipe lines under Revenue Act 1918, § 500, subd. (e), and section 501, subds. (a), (c), (d), being Comp. St. §§ 6309⅓a, 6309⅓b; "person transporting by pipe line" not being limited to common carriers, and classification of Hepburn Act (34 Stat. 584) not being applicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pipe Line.]

2. Internal revenue ⊚⟹2(12)—Statutes taxing transportation by pipe lines held valid, as excise, and not invalid, as direct tax without apportionment according to population (Revenue Act 1918, § 500, subd. [e], and section 501, subds. [a], [c], [d], being Comp. St. §§ 6309⅓a, 6309⅓b).

Revenue Act 1918, § 500, subd. (e), and section 501, subds. (a), (c), (d), being Comp. St. §§ 6309⅓a, 6309⅓b, imposing tax on transportation by pipe lines privately owned, as well as on common carriers, held to impose excise tax on use of property, and is not invalid as authorizing direct tax without apportionment according to population.

3. Constitutional law ⊚⟹62, 80(2)—Commissioner's computation of tax on privately owned pipe lines, from published tariff of pipe line company held exercise of administrative duty, not of illegally delegated judicial and legislative power (Internal Revenue Act 1918, § 501, subd. [d], being Comp. St. § 6309⅓b).

Computation by Commissioner of Internal Revenue of tax on pipe lines belonging to oil refinery, which transports its own crude oil only, under Internal Revenue Act 1918, § 501, subd. (d), being Comp. St. § 6309⅓b, from published tariff filed with Interstate Commerce

*Certiorari denied 47 S. Ct. 477, 71 L. Ed. ——.

Commission by pipe line company, operating in same territory *held* exercise of administrative duty, and not of illegally delegated legislative and judicial power.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Derby Oil Company against H. H. Motter, Collector of Internal Revenue for the District of Kansas. Judgment for plaintiff (5 F.[2d] 996), and defendant brings error. Reversed and remanded.

Charles T. Hendler, Sp. Atty. Internal Revenue, of Washington, D. C. (Al. F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan., and A. W. Gregg, Solictor of Internal Revenue, of Washington, D. C., on the brief), for plaintiff in error.

John H. Brennan, of Tulsa, Okl. (Charles G. Yankey and L. P. Brooks, both of Wichita, Kan., and Harry H. Smith, of Tulsa, Okl., on the brief), for defendant in error.

Before VAN VALKENBURGH, and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. The Derby Oil Company, a corporation, brought suit, in the District Court for the District of Kansas, against the collector of internal revenue for that revenue district to recover back the sum of $6,590.18, collected under protest as excise taxes on the transportation of oil by pipe line during the period from June 1, 1920, to December 31, 1921. Trial was to the court upon an agreed statement of facts, and judgment resulted for defendant in error, plaintiff below. As stated in the agreed statement of facts, defendant in error owned, operated, and controlled an oil refinery located at Wichita, Kan., and owned, operated, and controlled oil-producing properties in Butler county, and other counties in the state of Kansas, and owned, operated, and controlled two and three inch pipe lines connecting the greater part of its production with its refinery at Wichita, Kan., through which pipe lines it pumped the crude oil produced by it, and the crude oil purchased by it, to its refinery at Wichita, Kan.

The material parts of the Revenue Act of 1918 (40 Stat. 1057, 1101, 1102), under which the tax complained of was levied and collected, are as follows:

"Sec. 500. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1917—

*    *    *    *    *    *    *

"(e) A tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line." Comp. St. § 6309⅛a.

"Sec. 501. (a) That the taxes imposed by section 500 shall be paid by the person paying for the services or facilities rendered.

*    *    *    *    *    *    *

"(c) The taxes imposed by section 500 shall apply to all services or facilities specified in such section when rendered for hire, whether or not the agency rendering them is a common carrier. In case a carrier (other than a pipe line) principally engaged in rendering transportation services or facilities for hire does not, because of its ownership of the goods transported, or for any other reason, receive the amount which as a carrier it would otherwise charge, such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such goods if the carrier received payment for such transportation, such tax, if it can not be computed from actual rates or tariffs of the carrier, to be computed on the basis of the rates or tariffs of other carriers for like services as determined by the Commissioner. In the case of any carrier (other than a pipe line) the principal business of which is to transport goods belonging to it on its own account and which only incidentally renders services for hire, the tax shall apply to such services or facilities only as are actually rendered by it for hire. Nothing in this or the preceding section shall be construed as imposing a tax (1) upon the transportation of any commodity which is necessary for the use of the carrier in the conduct of its business as such and is intended to be so used or has been so used; or (2) upon the transportation of company material transported by one carrier, which constitutes a part of a railroad system, for another carrier which is also a part of the same system.

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax cannot be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined

by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner." Comp. St. § 6309⅛b.

Practically the sole issue presented is whether subdivisions (e) and (d) of the foregoing sections impose a valid tax on the transportation of oil produced, or purchased, and owned by the plaintiff. through pipe lines owned by the plaintiff, to a refinery owned and operated by the plaintiff.

[1] The main contentions of defendant in error to which attention need be directed are:

(1) That Congress, throughout these acts, including subdivision (d) aforesaid, had in mind solely and exclusively the oil pipe line common carriers, made such by the Act of June 29, 1906, commonly known as the Hepburn Act (chapter 3591, 34 Stat. 584).

In construing this act the Supreme Court in the Pipe Line Cases, 234 U. S. 548, 34 S. Ct. 956, 58 L. Ed. 1459, held that it was valid in so far as it applied to the great interstate oil pipe line companies as natural monopolies of oil transportation. It was held that said companies were common carriers, although they did not carry oil for others, but transported only their own commodities, through their own lines.

(2) That if subdivision (d) is made to apply to private activities in the use of property, as the government contends, then it is claimed that this subdivision is unconstitutional, as authorizing the levy of a direct tax without apportionment according to population among the several states.

The language of the applicable sections of the acts quoted, on its face, includes the use of pipe line facilities for the transportation of oil by defendant in error as disclosed by the agreed facts. The term "person transporting by pipe line" includes common carriers, of course, but it is not limited to such. The classification made by the Hepburn Act, as construed by the Supreme Court, can have no application here. That was a regulatory statute, while the act of 1918 is a taxing statute. There is no necessary relationship between regulation and taxation, nor is there anything in the act of 1918 to indicate that Congress had exclusively in mind the pipe lines designated as common carriers. The contrary rather expressly appears from the comprehensive and inclusive terms employed. The operations conducted by defendant in error are, in miniature, precisely the same as those of the great interstate carriers to which defendant in error concedes the act applies. It has wells of its own, and it has what may be called a trunk line between its wells and

its refinery. Branching from this are at least two gathering lines leading to the wells of other producers from whom it purchases oil. The oil from its own wells, and from those of other producers, is conducted through these gathering lines to tanks along its main trunk line, and is pumped to its refinery by relay pumping stations. This is exactly what the greater carriers do. The difference is in degree and volume only. It is conceded that the so-called common carriers carry their own oil. While they carry the product of others to market, they compel such outsiders to sell it to them before taking it into their pipes. The Pipe Line Cases, supra. loc. cit. 561 (34 S. Ct. 956).

Subdivision (d) of section 501 provides that the tax imposed by subdivision (e) of section 500 shall apply to *all* transportation of oil by pipe line. No exception is made. The subdivision makes it clear that the transportation by pipe line is not confined to oil transported for hire. That the act in its application is not confined to the common carrier pipe lines contemplated by the Hepburn Act is further made evident by the provision that, if the pipe line has no established tariffs by which the tax can be computed, the rates of other pipe lines for like services may be employed. As is well known, the interstate common carrier pipe lines, under the Hepburn Act, not only are required to file, but do file, such rates. This provision shows that others, than such, were in the mind of Congress. Defendant in error is not taxed as a common carrier, but as one who transports oil by pipe line. The tax is levied upon the privilege of such transportation. In other words, it is not laid on the general business of the corporation, nor on the doing of business, as was the case in United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, but on the right to employ pipe line facilities. All those who employ pipe lines for transportation purposes, whether common carriers or not, are placed in the same class and upon the same footing.

[2] This tax is laid as an excise. Defendant in error contends that it is tantamount to a direct tax—in effect, assessed upon the commodity or business, and, as an incident to the latter contention, it is claimed that the tax was intended to be levied upon the business of transportation as such; that the business of defendant in error is not that of transportation, but that transportation is a mere incident of its production and refining of oil; that, so viewed, this tax is, in effect, a direct tax upon the business, and likewise upon the

oil itself; that this offends against the constitutional provision demanding apportionment according to census. This was the view taken by the trial court, whose opinion was also bottomed upon the consideration, in effect, that the imposition of this tax was an unwarranted invasion of private rights. The trial court was also of opinion that, if defendant in error be deemed to be engaged in the business of transportation, then the material transported was its own, for use in its own business, and was exempted from taxation by the exception in the act. But that exception not only is made not to apply to pipe lines, but, even if so applicable, the transportation in question is not of the nature covered by the exception which applies only to articles and material used as an incident to the transportation itself; such as, in the case of railroads, ties, and rails for roadbed, rolling stock, and supplies of that nature. Railroads are not exempt from the tax upon other commodities not inhering in the business of transportation, even though the property of the road itself.

We conclude that this tax, as laid, is an excise tax. It is not for this court to determine whether Congress should have passed this act. It is sufficient that Congress has authority to impose excises, and that this is an excise. It is not a tax on property, but upon the privilege of using property. The classification made is one of transaction. As an excise tax on the employment of pipe line facilities for the transportation of oil it is clearly within the power of Congress to impose. That power, in cases far more debatable than this, has frequently been exercised, and its exercise has as frequently been upheld, as witness the array of cases collated by counsel for plaintiff in error upon this point: License Tax Cases, 5 Wall. 462, 471, 18 L. Ed. 497; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 491, 558, 15 S. Ct. 673, 39 L. Ed. 759; Patton v. Brady, Executrix, 184 U. S. 608, 617, 22 S. Ct. 493, 46 L. Ed. 713; Meischke-Smith et al., v. Wardell, 286 F. 785; Hylton v. United States, 3 Dall. 171, 1 L. Ed. 556; Pacific Ins. Co. v. Soule, 7 Wall. 433, 443, 19 L. Ed. 95; Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482; Scholey v. Rew,

23 Wall. 331, 23 L. Ed. 99; Mich. C. R. Co. v. Collector, 100 U. S. 595, 25 L. Ed. 647; Knowlton v. Moore, 178 U. S. 41, 81, 20 S. Ct. 747, 44 L. Ed. 969; Nicol v. Ames, 173 U. S. 509, 19 S. Ct. 522, 43 L. Ed. 786; Treat v. White, 181 U. S. 264, 269, 21 S. Ct. 611, 45 L. Ed. 853; Cornell v. Coyne, 192 U. S. 418, 24 S. Ct. 383, 48 L. Ed. 504; Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496; Thomas v. United States, 192 U. S. 363, 24 S. Ct. 305, 48 L. Ed. 481; McCray v. United States, 195 U. S. 27, 61, 62, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Flint v. Stone-Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Billings v. United States, 232 U. S. 261, 280, 282, 283, 34 S. Ct. 421, 58 L. Ed. 596; Bowman v. Continental Oil Co., 256 U. S. 642, 648, 41 S. Ct. 606, 65 L. Ed. 1139; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 296, 18 S. Ct. 594, 42 L. Ed. 1037; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 92, 21 S. Ct. 43, 45 L. Ed. 102.

[3] It is further urged that the duties and powers assumed by the Commissioner under the provisions of subdivision (d), as construed by the department, prescribing the basis upon which the tax is computed in case no charge for transportation is made and the person transporting has established no actual bona fide rates or tariffs, result in an illegal delegation of both legislative and judicial power. (The tax in this case was computed from the published tariff of the Empire Pipe Line Company filed with the Interstate Commerce Commission—a pipe line company operating in the same general territory, and from which a portion of the oil transported by defendant in error was purchased. This was an administrative duty authorized by the act. Whether in the absence of such rates or tariffs the Commissioner might make an independent determination of the reasonable charge for such transportation need not be decided, because no such power was exercised.

It follows that the judgment must be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

It is so ordered.