### DIXIE OIL CO., Inc., v. UNITED STATES.*

District Court, W. D. Louisiana, Shreveport Division. October 22, 1927.

No. 1599.

Internal revenue ⬿9(14)—Oil producer, transporting oil through its own pipe line, held subject to tax (Revenue Act 1918, §§ 500, 501 [d]; Comp. St. §§ 6309⅓a, 6309⅓b).

An oil producer, which transported oil through its own pipe line from its field for 8,000 feet to a railroad, from which point it was shipped by rail, *held* subject to tax on such transportation, under Revenue Act 1918, §§ 500, 501 (d), being Comp. St. §§ 6309⅓a, 6309⅓b.

At Law. Action by the Dixie Oil Company, Incorporated, against the United States. Judgment for the United States.

Hunter & Morgan, of Shreveport, La., for plaintiff.

Philip H. Mecom and J. Fair Hardin, both of Shreveport, La., for the United States.

DAWKINS, District Judge. This is an action to recover money alleged to have been unlawfully collected of petitioner as taxes

upon the transportation of oil by pipe line. Plaintiff owns a tract of some 700 acres of land in the parish of Caddo, Louisiana, upon which it has a large number of producing oil wells. Oil from these wells is first pumped into settling tanks on the property, and thereafter through a pipe line some 8,000 feet in length to the main line of the Texas & Pacific Railway Company. When tank cars are available, the oil goes into them direct from the loading rack; but, when such facilities cannot be had, it has a tank of some 55,000 barrels' capacity, situated adjacent to the right of way, into which the oil is pumped, to be held until cars can be furnished for its transportation by the railroad. The collector of internal revenue determined that the transporting of the oil through the 8,000 feet of pipe line to the railroad rendered petitioner liable to the payment of the tax imposed by sections 500 and 501 of the Revenue Act of 1918 (40 Stat. 1057, 1101, 1102 [Comp. St. §§ 6309⅓a, 6309⅓b]), and accordingly collected of the plaintiff the sum of $5,329.77, as such, which was paid under protest, and this suit instituted for recoupment.

The contention of plaintiff is that the pipe line in question constitutes merely a part of its production facilities, and does not fall within the contemplation of the statute; whereas the government claims that the law imposes the tax upon all transportation of oil by pipe line, in language which is plain, unambiguous, and requires no construction. The jury was waived, and the case has been submitted upon an agreed statement of facts, which is substantially as above stated.

Plaintiff handles its own oil exclusively, and argues that the situation is no different to what it would be if its oil-producing lands adjoined the right of way of the railroad company, and it pumped the oil into cars or tanks, just as is now done after it passes through the 8,000 feet of pipe line; in other words, that what it does is nothing more than to gather or deliver the oil to the carrier upon its right of way, where the act of transporting first begins. It asks, in effect, could the tax be collected if, instead of using the pipe line, it had hauled the oil from its settling tanks in its own trucks and delivered the same to the railroad?

It occurs to me that this is a begging of the question. In the first place, the law imposes the tax upon a certain method of transportation—i. e., by pipe line—in which that by truck is not included. It is admitted that the pipe line companies (common carriers), operating independently of the large producers, like the plaintiff, have gathering

branches running into the oil fields to take care of the production of producers who do not have their own facilities for either transporting it to the main trunk lines of the pipe line companies or to the railroads, and that an additional charge is made for this service, as well as for the use of loading racks, etc., and upon which charges the law imposes the tax that must be paid by the purchaser, or, which is the same thing, if the oil is purchased at tanks upon the property, these charges are taken into consideration, as well as the amount of the taxes, in the price paid for the oil. In any event, the tax comes out of the pocket of the producer. Hence, if the producer, who is fortunate enough to own these facilities for the handling of his own oil, is not liable for the tax, then he enjoys just that much advantage over the one who does not, and discrimination becomes apparent.

It would seem that Congress took cognizance of this situation when it added a new subparagraph by the act of 1918 to the provisions of the Revenue Act of 1917, which is subdivision (d) of section 501, reading as follows:

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax can not be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

This subsection appears plain and emphatic in its application to "all transportation of oil by pipe lines." It recognizes the existence of a situation identical with the one here; that is, that the producer, who owns his own pipe line facilities and transports alone his own oil, will not have established rates, and the Commissioner of Internal Revenue in such circumstances is authorized to determine the tax by ascertaining what is paid for the same service in "like" circumstances in the same vicinity.

I do not think the court would be justified in reading into the statute an exception which it not only does not contain, but which Congress evidently intended to avoid, by requiring the payment of the tax upon "all transportation by pipe line," including cases where the oil and the pipe line are owned by the same person, and no transportation charge as such is made. See Motter, Collector, v. Derby Oil Co. (C. C. A.) 16 F.(2d) 717. It is true that in the case just cited the oil was gathered in the field and transported by the pipe line a distance of some 30 miles to the refinery, and in addition to that owned by the taxpayer it purchased from others oil which it also transported to its said refinery; but, in my opinion, this does not distinguish the case from the one at bar, for the reason that the great bulk of the oil was owned by the Derby Oil Company, and the transportation tax was held to be due upon all of it.

I do not think that the length of the pipe line, or the fact that in the present case there was an additional transportation by rail afterwards, can affect the situation. The amount collected was the tax imposed upon the determined cost of transporting and loading of the oil upon the cars of the railroad company, and did not include the cost of transportation from that point to destination, which was the refinery of the Standard Oil Company of Indiana, situated in that state. It is a difference only in degree, and not in principle.

For the reasons assigned, there should be judgment rejecting the demand of the petitioners. A decree in accordance with these views may be presented. Requests for specific findings of fact and law have been filed by the plaintiff, and appropriate rulings have been indorsed thereon.