### DIXIE OIL CO. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
March 12, 1928.

No. 5237.

1. **Internal revenue** ☞9(14)—**Oil producer, transporting its oil through its own pipe line, held subject to tax (Revenue Act 1918, §§ 500, 501[d]; Comp. St. §§ 6309⅓a, 6309⅓b).**

An oil producer, which transported its oil through its own pipe line from its field for 8,000 feet to a railroad, from which point it was shipped by rail, *held* subject to tax on such transportation, under Revenue Act 1918, §§ 500, 501(d), being Comp. St. §§ 6309⅓a, 6309⅓b.

2. **Words and phrases—"Transportation."**

There is "transportation" of a thing when it is carried from one place to another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transport—Transportation.]

In Error to the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

Action at law by the Dixie Oil Company against the United States. Judgment for defendant and plaintiff brings error. Affirmed.

For opinion below, see, 23 F.(2d) 888.

Robert A. Hunter, of Shreveport, La. (Robert A. Hunter, Cecil Morgan, and Robert P. Hunter, all of Shreveport, La., on the brief), for plaintiff in error.

Philip H. Mecom, U. S. Atty., of Shreveport, La., and Chas. T. Hendler, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C. (Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., and C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and Charles T. Hendler, Sp. Atty. Internal Revenue, both of Washington, D. C., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by plaintiff in error (herein called plaintiff) to recover an amount of taxes paid by it under protest, which amount was claimed by the taxing officials to be due under the provisions of Revenue Act 1918, §§ 500(e) and 501(d) 40 Stat. 1102, 1103 (Comp. St. §§ 6309⅓a, 6309⅓b), imposing a tax on "all transportation of oil by pipe line."

[1] The case was tried by the court without a jury on a stipulation of facts made by the parties. The following was shown by that stipulation:

Plaintiff owned and operated a gas and oil lease covering approximately 700 acres, on which there were a number of producing oil and gas wells; the eastern boundary of the lease being about 8,000 feet from the nearest railroad, the Texas & Pacific Railroad. Plaintiff owned a pipe connecting the wells on its lease with a loading rack on the Texas & Pacific Railroad; the loading rack also being owned by plaintiff. The oil produced was pumped from the wells into a battery of settling tanks located in the western part of the lease and another battery of such tanks located near the eastern side of the lease. From those settling tanks the oil was pumped to the loading rack, and there loaded into tank cars, if such tank cars were available. If no tank cars were available, the oil was stored in the storage tank located near the eastern boundary of the lease, and when tank cars were available the oil was pumped from the storage tank to the loading rack. When the oil was loaded in tank cars it was shipped to Whiting, Ind., to the Standard Oil Company of Indiana, for refining by that company. The control of the oil remained exclusively in plaintiff until delivery was made to the railroad by

its being loaded in tank cars. Said pipe was never used as a common carrier pipe line. No charge has been made for the use thereof, and it has not been used, except by plaintiff, for the purpose of carrying its own oil produced on said lease to the loading rack, where its transportation by rail began.

The stipulation contained an admission that evidence could be produced showing practices of common carrier pipe lines as to charges for transportation of oil by pipe line. That admission was made subject to plaintiff's objection that the evidence referred to was irrelevant, incompetent, and immaterial.

In behalf of plaintiff it was contended that its carriage of its own oil in its own pipe, extending from its lease to its loading rack, was not "transportation of oil by pipe line," within the meaning of the statute.

In addition to other taxes imposed by section 500 of that act from and after April 1, 1919, that section imposed "(e) a tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line." Immediately succeeding provisions of section 501 of that act, in reference to taxes on transportation by carriers other than pipe line, is the following provision of that section:

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax cannot be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation."

The language of the just-quoted provision is inconsistent with the conclusion that the application of the tax was made dependent upon the person transporting oil by pipe line being a common carrier or a carrier of oil for hire, or upon any oil other than that owned by the transporter by pipe line being at any time transported by means of that line. The language used requires the conclusion that the excise tax applied to transportation of oil by pipe line, though the transporter owned that line and all oil transported by means of it. Liability for the tax cannot be escaped by limiting the use of the pipe line to the transportation of oil owned by the transporter, whether the ownership of all or some of the oil was acquired by purchase or as a result of the transporter's operations as an oil producer.

[2] We do not think that the carriage of the oil by pipe line from plaintiff's settling tanks or its storage tank on its lease to the loading rack, a distance of more than a mile and a half, can properly be said to be, not "transportation of oil by pipe line," but an incident or part of the production of the oil or of the loading of it into tank cars for transportation. There is transportation of a thing when it is carried from one place to another. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 203, 5 S. Ct. 826, 29 L. Ed. 158; United States v. Kambeitz (D. C.) 256 F. 247. The production of the oil, the extraction of it from beneath the earth's surface, and the preparation of it for transportation, by depositing it in settling or storage tanks, were completed before the movement of it from plaintiff's lease began. The oil's journey to its destination had begun when it left plaintiff's premises, though that journey was interrupted by putting the oil in the loading rack. The movement of the oil from plaintiff's lease preparatory to its being loaded into tank cars was as much transportation of it by pipe line as it would have been if the distance covered had greatly exceeded a mile and a half. It follows that, as the tax applies to "all transportation of oil by pipe line," liability for the tax was incurred by what was done by plaintiff. Conclusions similar to those above stated were reached in the case of Motter v. Derby Oil Co. (C. C. A.) 16 F.(2d) 717; Id., 273 U. S. 762, 47 S. Ct. 477, 71 L. Ed. 879.

The terms of the provision in question indicate that it was contemplated by the lawmakers that, where the transporter of oil by pipe line has no tariff or rates of its own, evidence of the rates or tariffs of other pipe lines for similar services could be considered in arriving at a basis for computing the tax. It was such evidence that was admitted, subject to the above-mentioned objection. We are of opinion that that evidence was not subject to the objection made to it. Services by a transporter for hire of oil by pipe line may be similar to services rendered by a transporter who owns both the pipe line and all oil transported by means thereof.

No reversible error being shown by the record, the judgment is affirmed.