### STANDARD OIL CO. v. McLAUGHLIN, Collector of Internal Revenue.[*]
#### No. 6822.

Circuit Court of Appeals, Ninth Circuit.
Sept. 16, 1933.

[*]Rehearing denied December 11, 1933.

F. D. Madison, Alfred Sutro, H. D. Pillsbury, Oscar Sutro, and Felix T. Smith, all of San Francisco, Cal., for appellant.

Geo. J. Hatfield, I. M. Peckham, and H. H. McPike, U. S. Attys., and Esther B. Phillips, Asst. U. S. Atty., all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

The Standard Oil Company brought suit in the District Court of the United States for the Northern District of California against the defendant as collector of internal revenue, to recover taxes paid under protest to the collector for the years 1919, 1920, and 1921. From a judgment in favor of the defendant the Standard Oil Company has brought this appeal.

The appellant is a California corporation owning and operating its own pipe lines for the transportation of its own oil. It is not a common carrier of oil and transports no oil not owned by it. The Revenue Act of 1918 (40 Stat. 1057, 1102), under which the tax was collected, provides as follows:

"Sec. 500. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1917—
* * *

"(e) A tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line. * * *

"Sec. 501. (a) That the taxes imposed by section 500 shall be paid by the person paying for the services or facilities rendered. * * * ·

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax can not be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

It is admitted that there were neither "any actual bona fide rates or tariffs in existence from which the tax could be computed" nor "any basis of rates or tariffs of other pipe lines for like service or for pipe line movement like the movement of oil through the pipe lines of plaintiff." Under the statute (section 501 (d) (2) supra), therefore, the tax had to be computed on the "basis of a reasonable charge for such transportation" fixed by the commissioner. In accordance with Treasury Decision No. 2834, Regulation 49, art. 22, which required the taxpayer to notify the commissioner of cases coming under section 501 (d) (2), supra, the appellant reported these facts to the Commissioner of Internal Revenue on May 7, 1919, and requested him to fix the reasonable charge for transportation of oil by appellant. This determination was delayed and the time within which appellant should file its return was extended from time to time until September 28, 1920, when the commissioner certified an assessment of taxes in the sum of $467,853.74 covering taxes due from April 1, 1919, to May 31, 1920. Demand for payment was made by the collector in April, 1921, and on April 14, 1921, a claim for abatement was filed by appellant. On February 14, 1922, another assessment was certified covering taxes due from April 1, 1919, to September 30, 1921, in the sum of $2,333,042.17, and demand for payment thereof was made March 1, 1922, as to which assessment a claim for abatement was filed on March 10, 1922. A third assessment in the sum of $598,967.23, covering additional tax due for the period from April 1, 1919, to September 30, 1921, and also tax due from October 1, 1921, to December 31, 1921, was certified on December 27, 1922, demand for payment made by the collector on January 16, 1923, and a claim for abatement of the same filed by appellant on January 23, 1923. No determination was had as to any of the claims for abatement until July 24, 1924, when the sum of $853,710.22 was allowed by way of abatement on the second assessment, leaving a balance of $1,479,331.95, the claims as to the first and third assessments being allowed in full, the notice stating: "As your entire liability for the period covered by this assessment has been paid and credited against another assessment, the claim is allowed in full."

At the time when the formal notice of adjustment of the claim for abatement was given, the taxes abated had in fact been paid on a recomputation of which appellant received informal notice February 16, 1923, and formal notice June 27, 1923. Formal demand for payment of the recomputed tax was made March 19, 1924; the tax was paid under protest March 29, 1924, and negotiations for compromise of demands for penalty and interest at 1 per cent. per month were entered into. The penalty was compromised but the interest was not, and appellant finally paid under protest the interest at 1 per cent. per month from the time of formal notice of the recomputation (June 27, 1923) to the time when the tax was paid. A claim for refund having been duly made and denied this action was commenced to recover the taxes ($1,479,331.95) and interest paid ($139,811.16).

The appellant contends that the statute as applied to it is unconstitutional, (1) because it is a direct tax which is not apportioned according to census, as required by article 1, § 9, clause 4 of the Constitution; (2) because, if it should be held to be an excise tax, it is not uniform, as required by article 1, § 8, cl. 1, of the Constitution; (3) because there is a delegation of legislative power to the commissioner to fix the basis upon which the tax is computed; and (4) because the act violates the due process clause of the 5th Amendment to the Constitution, in that the taxpayer has no opportunity to be heard as to the reasonableness of the charges fixed by the commissioner.

██ The contention of appellant that the tax is a direct tax is based upon two grounds: (1) That it was impossible for it to use its own property without incurring the tax; and (2) as the law was administered the tax could not be passed on to the consumer and hence was a direct and not an indirect tax. In Motter v. Derby Oil Co. (C. C. A.) 16 F. (2d) 717, a case where the taxpayer owned and used its own pipe line for transporting oil, the identical statute was attacked as unconstitutional because it was a direct tax. The Circuit Court of Appeals for the Eighth Circuit there held that the statute did not impose a direct tax but that it imposed an excise tax on the employment of pipe line facilities for the transportation of oil, which the court held was clearly within the power of Congress to impose. The court also held that the delegation of power to the commissioner to fix a reasonable charge was not a delegation of legislative power where the rate is fixed with reference to the charges of similar transportation companies. In Meischke-Smith v. Wardell, 286 F. 785, 793 (under § 501 (d) (1), supra), this court, speaking through Judge Morrow, held that a similar provision of the war Revenue Act of 1917, § 501 (40 Stat. 315), was constitutional as applied to a pipe line owned and used by an oil company for transporting its own oil. It is claimed that this determination was not involved in the case, but it was directly involved and decided although the court might have rested with the holding that the two companies, the producing and the transportation companies, were not identical. This court also held in that case that the act of 1917, supra, applied to private pipe lines used by the owner and not dedicated to a common use. A similar tax was upheld under the Revenue Act of 1918, now under consideration, by the Circuit Court of Appeals of the Fifth Circuit in Dixie Oil Co. v. U. S., 24 F.(2d) 804, although it does not appear that the constitutionality of the statute was considered, although the court cited Motter v. Derby Oil Co. (C. C. A.) 16 F.(2d) 717, with approval.

In view of our own decision in Meischke-Smith v. Wardell, supra, and the more recent decision by the Circuit Court of Appeals of the Eighth Circuit in Motter v. Derby Oil Co., 16 F.(2d) 717, in which certiorari was denied by the Supreme Court, 273 U. S. 762, 47 S. Ct. 477, 71 L. Ed. 879, we feel that it is unnecessary to discuss the numerous authorities cited by the appellant on the subject of a direct tax. We agree with the trial court that the tax imposed was an excise tax and was not required by the Constitution to be apportioned to the states in accordance with the census. See Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226. It is not a necessary incident of an excise tax that it can be shifted to the ultimate consumer. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969, citing Nicol v. Ames, 173 U. S. 509, 19 S. Ct. 522, 43 L. Ed. 786.

██ If the tax is held to be an excise tax, appellant then contends the statute is unconstitutional because the tax is not uniform in that while the percentage of 8 per cent. named in the law remained fixed, the effective tax was not 8 per cent. of any definite figure, but simply a figure to be named by the commissioner as the reasonable charge for the transportation service. In Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 424, 58 L. Ed. 596, Chief Justice White, speaking for the court, said: "It has been conclusively determined that the requirement of uniformity which the Constitution imposes upon Congress in the levy of excise taxes, is not an intrinsic uniformity, but merely a geographical one. Flint v. Stone Tracy Co. [220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312], supra; McCray v. U. S., 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969."

There can be no doubt that the statute in question here meets the requirement of geographical uniformity. The mere fact that the base on which the 8 per cent. tax is computed may vary in different cases, due to different circumstances bearing on the reasonableness of the charge for the transportation of oil in pipe lines, does not constitute a lack of uniformity as that term is used in connection with excise taxes. The amount of the tax in each case will depend upon the amount of oil transported and the reasonable charge therefor, but all those under the same circumstances will pay the same tax.

██ It is also appellant's contention that the provision in the statute giving the commissioner authority to determine the reasonable charge for the transportation of oil, in absence of fixed rates or tariffs of the taxpayer or of fixed rates or tariffs of other pipe lines rendering similar services, is a delegation of legislative power making the statute unconstitutional. The rule in this regard is stated in the early case of Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 505, 36 L. Ed. 294, as follows: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law

makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

Cases are numerous in which statutes have been upheld which give to administrative officers the power to determine facts on which the legislation is based. See Union Bridge Co. v. U. S., 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523; Field v. Clark, supra; Monongahela Bridge Co. v. U. S., 216 U. S. 177, 30 S. Ct. 356, 54 L. Ed. 435; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525; Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624. We are in full accord with the opinion of the trial judge in this regard wherein he stated: "The taxing statute, however, designates the thing to be taxed —transportation of oil—fixes the rate of taxation—eight per cent—and levies the tax. The only thing remaining to be determined is, in case of taxpayers situated as is plaintiff, the reasonable charge for transportation to be used as a basis for computing the tax levied. The Commissioner is left to find a fact, which in the nature of things Congress could not find in advance; what he is required to do is merely in execution of the Act of Congress in levying this transportation tax. This is not a delegation of legislative power contrary to the Constitution. Hampton, Jr., & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624."

It clearly appears from the provisions of section 501 (d) that the reasonable charge contemplated is a charge similar to that made by the owners of pipe line where they have dedicated their property to a public use. The reasonable charge for such use has been fixed by numerous decisions of the Supreme Court to be a fair return upon a fair valuation of the property utilized in performing the public service. In determining the tax it was evidently assumed by Congress that the rates actually charged by such transportation companies would be fair and reasonable rates and that such rates should be applied to the private carrier where such rates were available. Subdivision (d) (2) furnishes a rule for the determination of the charges, in case there is no other pipe line carrier serving the public. They must be reasonable charges and equivalent to those which would be imposed by the taxpayer if it received compensation for such transportation. The use of the word "reasonable" in this connection, we think, could have no other significance than that the charges fixed should be such as to give a fair return upon a fair value of the property used in the transportation of the oil. In this connection it should be said that the tax of $2,333,042.17 fixed by the assessment of February 14, 1922, was based upon the proposed pipe line transportation rates filed by appellant with the California State Railroad Commission when the power of the commission to require the appellant to act as a common carrier of oil through its pipe lines was asserted by the State Railroad Commission. While the Commissioner of Internal Revenue may have been right in assuming that such charges would have been imposed by the taxpayer "if it received compensation for such transportation" (subdivision (d), supra), nevertheless, in abating this tax the commissioner evidently concluded that the charges fixed by him must be reasonable and that the schedule of rates filed by the appellant with the Railroad Commission were unreasonable and excessive. Evidently on that theory the charges were cut almost in half by the commissioner when he acted upon the claims in abatement. It is well established that the Legislature can delegate the power to fix the amount of the rates and charges. Laws delegating such power to regulatory bodies such as the Interstate Commerce Commission and other similar state commissions have been uniformly upheld, notwithstanding the fact that the Congress is prohibited by the Constitution from delegating its power, and that state Constitutions, either expressly or by necessary implication, contain similar inhibitions. The fact that in the case at bar the right to fix reasonable charges for transportation is merely incidental to the imposition of a tax does not alter the legal situation. We think the law in that regard is clearly constitutional.

The next contention advanced in the attack on the constitutionality of the law is with reference to a long line of decisions holding that to constitute due process of law required by the Constitution a taxpayer must be given an opportunity to be heard at some stage in the proceedings fixing the tax. That this opportunity was provided and actually utilized by the appellant in this case by the hearing had upon its claims in abatement wherein the tax originally claimed was cut about in half, is not seriously disputed. The method of attacking a tax by way of a petition for abatement is established by the rules of the Treasury Department and under the act of

Congress such rules become a part of the law. The appellant was entitled to a hearing under this regulation and had such a hearing. This, we think, was sufficient. See Orient Ins. Co. v. Board of Assessors, 221 U. S. 358, 31 S. Ct. 554, 55 L. Ed. 769. The appellant in this regard contends that the rules of the Treasury Department did not specifically provide for a hearing on the petition for abatement but we think the taxpayer has an opportunity through the petition itself to assert any fact which, in his judgment, affects the validity or amount of the tax and the fact that under the rules of the Treasury Department such a petition must be acted upon constitutes a sufficient hearing whether or not the taxpayer adduces evidence before the commissioner.

■■ Appellant claims that as sections 500, 501 of the Revenue Act of 1918 were expressly repealed by the Revenue Act of 1921 (42 Stat. 227), the commissioner had no authority thereafter to fix the reasonable charge for the use of its pipe line as a basis for the imposition of the 8 per cent. tax and that therefore the tax cannot be assessed or collected after the repeal of the statute levying the tax. This, of course, would be true in the absence of a general or special saving clause. Such a general saving clause is found in section 13 of Revised Statute (1 USCA § 29) as follows: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide. * * * "

The Revenue Act of 1921, § 1400, subsec. (b), 42 Stat. 321, also contains a special saving clause, in part, as follows: "The parts * * * which are repealed by this Act * * * shall * * * remain in force for the assessment and collection of all taxes which have accrued * * * and for the imposition and collection of all penalties or forfeitures which have accrued or may accrue in relation to any such taxes."

We shall first consider the effect of the saving clause contained in the Revenue Act of 1921. If it shall be found that this clause was sufficient to justify the collection of the tax in the case at bar, it will be unnecessary to consider whether or not the general saving clause in Rev. St. § 13 (1 USCA § 29), is applicable in a case where the repealing statute contains a special saving clause. See Great Northern R. Co. v. U. S., 208 U. S. 452, 465, 28 S. Ct. 313, 52 L. Ed. 567.

The saving clause contained in the Revenue Act of 1921, supra, applies to all taxes "which have accrued" and authorizes the "assessment and collection" of such taxes with the appropriate penalties and forfeitures "which have accrued or may accrue in relation to any such taxes." It is argued that until the tax is due and payable it has not accrued. Appellant cites Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212; Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894; Sturges v. U. S., 117 U. S. 363, 6 S. Ct. 767, 29 L. Ed. 920; Meredith v. U. S., 13 Pet. 486, 10 L. Ed. 258; U. S. v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131; People v. Carpenter, 274 Ill. 103, 113 N. E. 135; U. S. v. Anderson (U. S. v. Yale & Towne Mfg. Co.), 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Lucas v. North Texas Lbr. Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, and many other cases in which the word "accrued" has been considered and defined for the purposes of the decision. We will not undertake to follow the ramifications of the argument. Suffice it to say that the word "accrued" has more than one definition and in any event when used in legislation is to be interpreted in connection with the context of the statute so as to effectuate the purpose of the Legislature. Appellant's claim is that Congress has relieved it of taxes for the years 1919, 1920, 1921, where other taxpayers similarly situated had already paid the tax, or it had accrued as to them. This relief is not claimed because of any reason distinguishing the case of the appellant from the case of the others but solely because of the delay of the taxing officers or of the appellant, or both, in arriving at the amount of the tax. The appellant contends that it had always been pressing the commissioner to fix a "reasonable charge" for the use of its pipe line and that the delay was wholly due to the uncertainty in the statute and the inability of the commissioner to reach a conclusion upon the law and the facts. Granting this for the moment, still no reason is shown why Congress in repealing the law levying a tax which had been paid by others should make an exception in favor of the appellant and others, if any, who had not paid the tax. The repealing act was not a remedial act and did not purport to remedy past wrongs, but looked solely to the future in its repeal of the tax. To ascribe to Congress an intent to relieve the appellant from a tax liability for the years 1919, 1920, and 1921 would be to hold that Congress intended to make a gift of public property to them. In re Estate of Stanford, 126 Cal. 112, 54 P. 259, 58 P. 462, 45

L. R. A. 788. The saving clause contemplates the "accrual" of the tax before it is assessed. The appellant admits that when the tax is so far fixed that its amount is definitely ascertainable it has "accrued," although it is not yet due or payable, citing U. S. v. Anderson (U. S. v. Yale & Towne Mfg. Co.), 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347, supra, where the Supreme Court said: "In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued."

In short, the appellant's contention comes to this, that the tax had not accrued because, to quote from its brief: "The Commissioner had not determined what should be considered a reasonable charge applicable to plaintiff's transportation of its own oil upon which the tax could be computed. * * * The tax in this case depended upon an unknown quantity when the statute was repealed, i. e., the commissioner's determination as to a reasonable charge against which it could be assessed."

As a matter of fact, on September 28, 1920, the commissioner had certified an assessment of taxes covering the taxes due from April 1, 1919, to May 31, 1920, and payment therefor had been demanded. This assessment was based upon the cost of transporting oil as ascertained from the books of the appellant. This cost varied from month to month and from place to place, but the commissioner acted upon it and made an assessment upon the basis of such costs. This determination was in effect a decision that the actual cost of transportation of oil was a reasonable amount to be charged for such transportation. The appellant insists throughout that the act of the commissioner, in fixing a reasonable charge, is a separate and distinct act from the making of the assessment, and, consequently, ignores this assessment as a determination of the reasonable charge for transportation. The act of the commissioner in fixing the charge is an integral part of the assessment. It could be performed in advance of the formal assessment or at the time of the assessment. The act of making the assessment ipso facto determines the reasonable charge. Assuming that the assessment which was based upon the cost of transportation of oil as shown by the appellant's books was in effect a determination by the commissioner that the cost of transportation was a reasonable charge for such transportation, the appellant had at hand in its own books a basis for fixing the amount of the tax for the other months of the period for which the tax was applicable under the Revenue Act of 1918. If we accept this premise the tax had "accrued" within the rule as advocated by the appellant. Although we see no escape from this proposition we wish to place our decision upon the broader ground that regardless of the action of the commissioner in fixing the amount of the tax, the tax accrued before the repeal of the Revenue Act of 1918. In this connection it should be noted that this tax is payable monthly at the time fixed for filing the monthly return without previous assessment by the commissioner or notice from the collector, and in default of such payment a penalty of 5 per cent. and interest at 1 per cent. per month is added. Revenue Act 1918, § 502. This section requiring monthly returns (section 502 supra), which is expressly made applicable to persons "receiving any payments referred to in section 500," supra, we think is applicable as well to those who transport their own oil in their own pipe lines, who are taxable under section 501 (d) (2), supra. No doubt appellant would concede this, subject to the qualification that the commissioner should first determine the reasonable charge to be applied. In any event, we think the obstacle to such payment suggested by the appellant is more imaginary than real. The statute which requires a monthly return and payment of the tax without assessment necessarily implies that the taxpayer shall in the first instance estimate the amount of the tax payable, subject to correction by the assessment made later by the commissioner. It is true that in the case of a public utility transportation company whose charges are based upon rates fixed for transportation of oil by it, the company is only required to add 8 per cent. thereto and return the amount so collected from its customers. So far as the statute is concerned, we see no reason why the private carrier of oil might not with equal facility set up a tentative charge for the transportation of its own oil and pay a tax thereon monthly with its return subject, of course, to the final determination of the reasonableness of the charge by the commissioner, just as the appellant did set up

its estimate of its cost of transportation of its own oil in its own pipe lines. The statute provides: "In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation." (Revenue Act 1918, § 501 (d).

It is true that the statute in such case provides that "if the tax cannot be computed on actual bona fide rates or tariffs, it should be computed" upon a basis determined by the commissioner as required by law. It is also true that the Regulations 49, Treas. Dec. 3824, under the Revenue Act of 1918, § 500, provides in accordance with the terms of the statute for the return of the tax (Art. 67), and provides further (Art. 22) that: "In the cases falling within the above-quoted provision of § 501, the basis of the computation of tax shall be upon the legal rates or tariffs of the carrier and, in the absence thereof, the actual rates or tariffs of other carriers for like service. If the basis of the tax can not be readily determined in the manner stated, the facts should be forthwith reported by the carrier to the Commissioner of Internal Revenue for determination by him of the basis of computation."

Article 91 also provides for monthly returns of taxes collected by the carrier and in cases in which it is impossible to make a proper return within the prescribed time provides for the extension of time, not exceeding 60 days, by the collector, upon application by the taxpayer and a proper showing for such extension, as was done in the case at bar.

Under these regulations the appellant properly assumed that it was entitled to have the reasonable charge for transportation of oil fixed by the commissioner before it made its return and paid the tax. The commissioner acquiesced in this view and extended the time for return from time to time. The commissioner ultimately made the assessment based upon the investigation and reports made by subordinates in his department, without any formal return by the taxpayer.

In view of this situation the contention of the appellant comes to this: That notwithstanding that the statute fixed the rate of the tax and the base upon which it should be computed subject to a finding of the fact by the commissioner, namely, the reasonable charge for transportation of oil, and provided that the tax should be payable before assessment and upon monthly returns, nevertheless the tax did not "accrue" before the repeal of the Revenue Act of 1918 because the commissioner delayed in finding the fact necessary to a fixing of the amount of the tax. By section 502 of the Revenue Act of 1918 the commissioner was authorized to require the taxpayer to furnish returns giving such information as might be desired by him for the purpose of fixing the tax. If the commissioner had required the taxpayer to furnish the necessary information to fix a reasonable charge such as the reasonable value of the property devoted to the transportation service, the reasonable charge could have been fixed and the tax assessed immediately upon the return. Instead, the rules of the Treasury Department evidently contemplated that the necessary information would be either furnished by the taxpayer or acquired by the commissioner by investigation and that amount of the "reasonable charge" would be given to the taxpayer as a basis upon which to make his return of the tax and payment thereon. The delay in fixing the amount of the tax was neither required nor contemplated by the law of 1918. The obligation to pay the tax was fixed by the Revenue Law of 1918. By engaging in the business of transporting oil in its pipe line the appellant became obligated to pay that tax to the United States. The law fixed the amount of the tax, namely, 8 per cent., upon a reasonable charge for the transportation of the oil actually transported. It left to the commissioner the determination of the facts and the amount of the tax levied by Congress in accordance with the facts as determined by him. Under these circumstances we think it clear that within the meaning of Congress the tax had accrued before the Revenue Act of 1918 was repealed. We think this so clearly follows from the decision of the Supreme Court in U. S. v. Anderson, supra, that we deem it unnecessary to discuss the numerous cases cited upon that subject.

We conclude that the saving clause in the Revenue Act of 1921 covered the tax here involved.

The appellant contends that in any event it should recover the taxes levied for the months of October, November, and December, 1921, amounting to $151,993.79. This contention is based upon a somewhat curious situation which developed during the effort of the commissioner to arrive at a conclusion as to the correct amount of the tax which should be paid by the appellant upon its use of the pipe line for the transportation

of oil during the period that the Revenue Act of 1918 was in effect. The three assessments made by the commissioner overlap. The first assessment was from April 1, 1919, to May 31, 1920. The second assessment covered the same period and in addition the months from June 1, 1920, to and including September 30, 1921. The third assessment was for the months of October, November, and December, 1921, and also included an additional tax for the period covered by the second assessment. Claims in abatement were filed by the appellant from each of these determinations. While these claims were pending the commissioner and the appellant, after numerous conferences and much correspondence, agreed upon the amount of the reasonable charge for the transportation of oil and also upon the amount of the oil transported. Under this agreement it only remained to compute the tax at the rate specified by the statute (8 per cent). The tax was computed by the commissioner and demand made for the amount thereof June 27, 1923. This amount, after correction of a relatively trifling error of $151.17, is the amount which was paid by the taxpayer in March, 1924. In fixing the amount of the tax the commissioner directed the collector that the payment should be applied to the second assessment, namely, the assessment covering the period from April 1, 1919, to October 1, 1921. The tax was so collected and applied.

The appellant contends that inasmuch as the tax it paid was for the period extending to December 31, 1921, it had overpaid the tax for which it is liable by the amount which accrued during the months of October, November, and December for the transportation of the oil transported during those months. At the time the tax was demanded (June 27, 1923) and paid (March 29, 1924), the commissioner had not formally acted upon the appellant's claims for abatement, but in July, 1924, he did so act. He abated the first assessment covering the period from April 1, 1919, to May, 1920, upon the ground that the tax had been satisfied by the payment of the second assessment which covered the same period. Similarly he abated the third assessment which covered the period from October 1, 1921, to December 31, 1921, and also covered a supplemental assessment for the period covered by the second assessment (April 1, 1919, to October 1, 1921) upon the ground that by the payment of $1,479,331.95 upon the second assessment that tax (to December 31, 1921) had been satisfied. The conclusion is inescapable that the commissioner fixed the entire tax for the entire period from April 1, 1919, to December 31, 1921, at the sum of $1,479,331.95, and as a matter of convenience applied that tax to the second assessment. The parties to this action agreed upon the trial that the rates fixed by the commissioner for the transportation of oil in his communication to the appellant were reasonable, and that the amounts of oil transported in the various months were the amounts shown by the books of the appellant. Upon the basis of this agreement the position of the appellant is correct that the tax for the period ending October 1, 1921, would be $151,993.79, less than the amount it paid. Its contention that it is entitled to a return of the amounts which appellant estimates for the last three months of 1921 ($151,993.79) is not based upon the merits as the total amount of the tax for which the appellant was liable, if any, was agreed upon but upon the method by which the commissioner undertook to carry out the terms of the agreement he made with the appellant in regard to the total amount of the tax due from it for the entire period during which the Revenue Act of 1918 was in force. To this technical position of the appellant we think there is a technical answer, namely, that his determination that the tax for the period ending October 1, 1921, was $1,479,331.95, was in effect a determination that the reasonable rates to be charged for that period were sufficient as applied to the oil transported to amount, at the tax rate of 8 per cent., to the tax paid by the taxpayer. The agreement of the commissioner with the appellant, before he acted upon the claims in abatement, as to the reasonable rates chargeable and the agreement of the parties upon the trial of the case that the amount fixed by the agreement was reasonable, does not alter the fact that the action of the commissioner upon the claim in abatement in legal effect fixed a larger amount as a reasonable charge than the amount agreed upon between the commissioner and the appellant before he acted upon the claim in abatement, an amount larger than agreed upon at the trial as a "reasonable charge." Neither the prior, nor subsequent, agreement of the commissioner as to what constituted a reasonable charge can alter the effect of his act in determining the amount of the tax when he passed upon the appellant's claims in abatement. It was evidently with this in view that the commissioner acted in passing upon the claim in abatement. He evidently concluded that as the amount of the tax had been agreed upon with the appellant it was immaterial in exact-

ly what manner he ruled upon the claims in abatement if the total amount demanded was equal to that which had been agreed to and paid by the taxpayer. In this view we think the commissioner was correct for the reasons stated. The court is bound by the determination of the commissioner upon the claims in abatement wherein the commissioner fixed the tax for the period up to October 1, 1921, at the amount of $1,479,331.95. In any event, the agreement that certain rates are reasonable is not an agreement that rates ten per cent greater are unreasonable.

 The appellant was required to pay, and did pay, interest amounting to $139,811.16. This interest was computed at the rate of 1 per cent. a month from June 27, 1923, when the payment of the agreed amount of the tax was demanded by the commissioner, to the date of the payment in March, 1924. Appellant contends that it is not liable for this interest. This contention is based in part upon the proposition that the saving clause in the Revenue Act of 1921, above quoted, expressly excepted the tax and penalties thereon, but did not expressly cover interest upon the tax. In this regard it may be stated that it is not altogether clear that the interest is not a part of the penalty. Section 502 of the Revenue Act of 1918, supra, provides: "If the tax is not paid when due, there shall be added as part of the tax a penalty of 5 per centum, together with interest at the rate of 1 per centum for each full month, from the time when the tax became due."

Assuming, however, that the interest of 1 per cent. a month is not a part of the penalty referred to in the statute, as might be indicated by the comma after the phrase, "a penalty of five per centum," the appellee meets the contention of the appellant by two claims: First, that all taxes bear interest regardless of whether or not the statute expressly so provides, citing in support of that contention the case of Billings v. U. S., 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596, where it is held that if the interest rate is not fixed by statute the taxes bear interest at a rate which must be reasonable and in conformity with the custom of the community; second, in addition to section 502 of the Revenue Act of 1918, supra, relating to interest, the appellee points out the somewhat different provisions of section 250 (e) of the Revenue Act of 1921 (42 Stat. 266), providing for the collection of interest on overdue taxes, and section 250 (h) of that act which makes subdivision (e) applicable to taxes "which have accrued or may accrue under the ∗ ∗ ∗ Revenue Act of 1918."

In view of the complexity of the situation, we quote somewhat extensively from the supplemental reply brief of the appellee in which appellee's position in regard to the payment of interest is stated with a confession of doubt as to the proper method of computing interest:

"To be quite candid, we think the application of section 250 (e) is not entirely clear. It seems to contemplate notice and demand by the collector, and interest running at 1% thereafter unless a claim in abatement is filed. Applying this retroactively would mean making a 6% interest rate apply to the taxes as originally demanded by the Collector, throughout the whole period when the abatement of these taxes, or any part of them, was pending.

"On the other hand, it seems contrary to reason to say that claims in abatement were really pending after June, 1923. It can hardly be disputed that when the Commissioner and the appellant agreed upon the rate, the quantities of oil, the distances and the amount of tax payable, there was, in fact, a full consideration of all the previous determinations of the Commissioner and of the taxpayer's claims in abatement. Now, whatever be the name we give to the agreement incorporated in the record at page 90, and again at page 232, it is manifest that by it the Commissioner modified all previous rulings, both as to rates and the amount of tax payable, and, in fact, fixed a rate and an amount of tax under that rate which was accepted by the taxpayer as correct in amount. The taxpayer's contention that previous rates were unreasonably high was thus accepted.

"The Commissioner demanded the payment of this amount on June 27, 1923, and at that time notified the taxpayer that a 5% penalty and interest 1% per month were payable under Revised Statutes, § 3184 (26 US CA § 104) (Rec. pp. 87–89). At this time the taxpayer's claims in abatement were, in a common sense meaning of the term, no longer pending. It seems to us that a notice of the amount of tax due was given this taxpayer, which was sufficient to start the rate of interest running at 1% under section 3184 of the Revised Statutes. There was a notice and demand, which the plaintiff received by mail, stating the amount of taxes and demanding payment, as required by Revised Statutes, § 3184. It is true that Revised Statutes, § 3184, contemplates that the Col-

lector shall give this notice, either in person or by a deputy, but it would seem that this language·is broad enough to include a notice from the Commissioner himself."

Upon the subject of interest we conclude:

 First. That whether or not interest was expressly saved by the provisions of the repealing clause of the law of 1921, that act, by section 250 (e) and (h), expressly required the imposition of the penalty and interest as therein fixed upon taxes accruing under the Revenue Act of 1918.

Second. That, inasmuch as the commissioner had assessed the tax for the period ending October 31, 1921, by his assessment made February 14, 1922, and the collector had demanded the payment thereof on March 1, 1922, interest began to run thereon at the rate·of 1 per cent. per month upon such demand in accordance with the provisions of § 250 (e) of the Revenue Act of 1921, in the absence of a claim in abatement; that by the filing of the claim of abatement within ten days after demand based upon this tax the interest rate became 6 per centum from the date of the demand so long as that claim in abatement was pending and undisposed of, to wit, to and including July 24, 1924. The tax was paid on March 29, 1924, and interest ceased at that time.

 Our conclusion, then, is that the amount of interest properly chargeable to the appellant was the sum of 6 per centum per annum from the date of demand, March 1, 1922, to the date of payment, March 29, 1924; that is, for a little over two years. The interest actually collected was less than this amount (about 9 per cent). In this view the interest charge was less than that fixed by statute and the appellant is not entitled to recover any part of the interest so paid. The appellant's answer to this proposition is that the provisions of the statute of 1921 fixing interest charges is applicable only to the income taxes. We see no reason why Congress should make a distinction between two types of taxes in fixing the penalty for failure to pay the tax when it was due. The language of section 250 (e) (h) is definite and applies generally to all taxes levied under the act of 1918 which includes the transportation tax in issue in this case. We think that the interest rate upon overdue taxes fixed in the law of 1921 for taxes under the Revenue Act of 1918 applies to the transportation tax where the demand for the tax was made after the enactment of the Revenue Act of 1921.

Judgment affirmed.